FILED
JUN 21 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK CUA, an individual, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| CORSOLUTIONS MEDICAL, INC., | ) | Case No. 04 C 8033 |
| Defendant. | ) | Judge William J. Hibbler |
| | ) | Magistrate Judge Ian H. Levin |
| CORSOLUTIONS MEDICAL, INC., | ) | |
| Counterclaimant, | ) | |
| v. | ) | |
| PATRICK CUA, | ) | |
| Counterclaim-Defendant. | ) | |

## NOTICE OF FILING

TO: David J. Stetler
Jonathan M. Cyrluk
Joni M. Green
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603

**PLEASE TAKE NOTICE** that on Tuesday, June 21, 2005, we caused to be filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, **CORSOLUTIONS MEDICAL, INC.'S RESPONSE TO PATRICK CUA'S: (1) MOTION TO DISMISS PURSUANT TO LOCAL RULES 40.3 AND 40.4, AND (2) MOTION TO DISMISS OR STAY PURSUANT TO THE *COLORADO RIVER* DOCTRINE**, a copy of which is hereby served upon you.

Dated: June 21, 2005.

Chicago, Illinois

Respectfully submitted,

CORSOLUTIONS MEDICAL, INC.

By: *Carrie E. O'Brien*
      One of Its Attorneys

Mark E. Furlane (ARDC #00897175)
Steven Shonder (ARDC #06238090)
Ngozi C. Okorafor-Johns (ARDC #06271377)
GARDNER CARTON & DOUGLAS LLP
191 North Wacker Drive
Suite 3700
Chicago, Illinois 60606-1698
Phone: (312) 569-1000
Facsimile: (312) 569-3000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK CUA, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CORSOLUTIONS MEDICAL, INC., ) | Case No. 04 C 8033 |
| ) | |
| Defendant. ) | Judge William J. Hibbler |
| ) | |
| ) | Magistrate Judge Ian H. Levin |
| CORSOLUTIONS MEDICAL, INC., ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| PATRICK CUA, ) | |
| ) | |
| Counterclaim-Defendant. ) | |

FILED
JUN 2 1 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**CORSOLUTIONS MEDICAL, INC.'S RESPONSE TO PATRICK CUA'S: (1) MOTION TO DISMISS PURSUANT TO LOCAL RULES 40.3 AND 40.4, AND (2) MOTION TO DISMISS OR STAY PURSUANT TO THE *COLORADO RIVER* DOCTRINE**

Defendant-Counterclaimant, CorSolutions Medical, Inc. ("CorSolutions"), through its attorneys, Gardner Carton & Douglas LLP, submits its response to Plaintiff and Counterclaim-Defendant Patrick Cua's ("Cua") (1) Motion to Dismiss Pursuant to Local Rules 40.3 and 40.4; and (2) Motion To Dismiss or Stay Pursuant to the *Colorado River* doctrine as follows:

**Introduction**

Local Rules 40.3 and 40.4 do not require or even suggest that the Court should dismiss CorSolutions' Amended Counterclaim because portions of the Amended Counterclaim arise out of the same subject matter of a case previously filed before Judge Moran and later dismissed by CorSolutions. Cua misconstrues these local rules. They do not apply to the circumstances of this case, and Cua's suggestion that they do is purely a delay tactic. Further, the *Colorado River*

doctrine does not require the dismissal or stay of the current action due to the existence of the Georgia state action. This Illinois federal lawsuit and the Georgia state action are not parallel, and no exceptional circumstances warrant such a dismissal or stay. The *Colorado River* doctrine cannot be invoked in this case. As discussed below, Cua's assertions to the contrary are entirely meritless, and therefore, his motion should be denied.

## Relevant Background Facts

CorSolutions provides disease management and related services. Cua started as an employee of CorSolutions in 1994 as a regional manager of sales and general manager of operations. At the time he was discharged in 2004, he was the Executive Vice-President of Sales and was responsible for overseeing all of CorSolutions' sales activities.

In June 2004, CorSolutions' Board of Directors hired outside counsel to investigate the allegations of two employees about the improper manipulation of patient survey satisfaction data. Cua was implicated in the allegations and in August 2004, was given the option of resigning for a reduced severance package or being terminated for "Cause" under his Employment Agreement. Cua declined to resign and was terminated for "Cause." When Cua was terminated, CorSolutions expressly advised him that, under his Employment Agreement, he remained bound by the confidentiality, non-compete and non-solicitation restrictions in the Agreement. Cua advised CorSolutions that he intended to honor his obligations and would not be seeking employment with a competitor of CorSolutions during the 12-month period of the restriction. This representation was not true because Cua had been actively seeking other employment with direct competitors of CorSolutions. Indeed, as early as January 10, 2005, Cua began working for a subsidiary of Matria Healthcare, Inc. ("Matria"), a direct competitor of CorSolutions, in virtually the identical role he held with CorSolutions.

2

While he was looking to work for a competitor in violations of his promises, on December 13, 2004, Cua filed this instant action, complaining that CorSolutions breached his Employment Agreement and discharged him in retaliation for accusing other CorSolutions' executives of engaging in misconduct ("the Illinois Federal Lawsuit").[1]

Then, on January 10, 2005, despite the fact that Cua consented to jurisdiction in Illinois under his Employment Agreement and agreed to have Illinois law govern those terms, Cua and his new employer Matria filed a declaratory judgment action in the Superior Court of DeKalb County, Georgia ("the Georgia Action").[2] That suit seeks (1) a declaration that the restrictive covenants in Cua's Employment Agreement are null and void, and (2) a TRO to prevent CorSolutions from enforcing those restrictive covenants anywhere. The Georgia court set a hearing on the motion for a TRO for January 12, 2005, which was later continued to January 14.[3]

Knowing that Cua was acting in violation of his Employment Agreement by working for a competitor and was asking the Georgia court to enjoin CorSolutions from filing an action in Illinois to protect its rights, CorSolutions' counsel drafted a counterclaim against Cua to be filed in Illinois <u>before</u> the Georgia TRO hearing set for January 14. However, CorSolutions' prior counsel, Seyfarth Shaw LLP (which already had entered its appearance in the action in this Court) had determined that it had a conflict preventing it from filing an action adverse to Matria. It therefore could not file the counterclaim. Although attempts were made by CorSolutions' present counsel to affect a substitution of attorneys,[4] there was insufficient time for Seyfarth

---

[1] The Court dismissed Cua's retaliatory discharge claim with prejudice on May 25, 2005.

[2] *Cua v. CorSolutions Medical, Inc., et al.*, No. 05 CV 1320-3. (Superior Court of DeKalb County, Georgia). See Plaintiff's Exhibit 1.

[3] On January 12, 2005, CorSolutions removed the Georgia Action to the United States District Court for the Northern District of Georgia. It was remanded on January 14, 2005 to state court.

[4] CorSolutions' current counsel contacted Seyfarth Shaw but the lawyer who had entered an appearance for CorSolutions was unavailable to execute a substitution of counsel form on January 13, 2005.

Shaw to withdraw its representation and permit CorSolutions to gets its counterclaim on file on January 13 -- before the Georgia TRO occurred on January 14. Thus, CorSolutions filed its counterclaim against Cua as a new action, which was randomly assigned to Judge Moran.[5]

The next day, on January 14, 2005 the Georgia state court entered a TRO preventing CorSolutions from, among other things, seeking to enforce the restrictive covenants or filing or pursuing any legal action in Illinois or elsewhere to enforce the covenants. Thereafter, Plaintiff's counsel sent a letter threatening CorSolutions with contempt if it made any attempt to prosecute its claims in the Illinois federal case.[6]

In the meantime, Cua continued to work for direct-competitor Matria in violation of Illinois law and the covenants of his Employment Agreement, causing CorSolutions to continuously suffer great financial harm. Eventually, CorSolutions determined that it had to seek an order from this Court permitting it, notwithstanding the unconstitutional Georgia TRO, to take action to stop Cua's unlawful conduct. Thus, on March 30, 2005, CorSolutions filed its Counterclaim[7] in the action before this Court, alleging, *inter alia*, breach of the restrictive covenants in the Employment Agreement and violations of the Illinois Trade Secret Act. CorSolutions then moved for preliminary and permanent injunctive relief. (By this time, Seyfarth Shaw had withdrawn its representation of CorSolutions, thus eliminating the conflict.) On April 13, CorSolutions voluntarily dismissed the unserved and inactive Judge Moran Action.

---

[5] *CorSolutions Medical, Inc. v. Cua*, 05 C 237 (N.D. Ill.) ("the Judge Moran Action"). See Plaintiff's Exhibit 5.

[6] On January 24, 2005, CorSolutions filed a Motion to Modify the TRO on the grounds that the order was overbroad and unconstitutional. The Georgia Court declined to modify the order. CorSolutions thereafter removed the Georgia Action to the Northern District of Georgia on federal question grounds, alleging that the order was void and unconstitutional. The Georgia federal court ultimately remanded the case back to state court on April 7, 2005.

[7] CorSolutions filed an Amended Counterclaim on May 2, 2005.

## Argument

### I. Local Rules 40.3 and 40.4 Do Not Require that CorSolutions' Amended Counterclaim Be Dismissed

In his motion to dismiss pursuant to the Local Rules ("LR") 40.3 and 40.4, Cua argues that CorSolutions' Amended Counterclaim must be dismissed so it can be reassigned to Judge Moran. Cua claims that this is required under LR 40.3(b)(2), *Refiling of Cases Previously Dismissed*, because before CorSolutions filed its Amended Counterclaim in this Court, it initially filed it as a separate complaint, which was assigned to Judge Moran. Cua's argument, however, is misguided because LR 40.3 does <u>not</u> apply to the present situation where there is no "refiled case," but rather, a counterclaim of an already pending case. The intended purpose of LR 40.3 -- to protect judicial resources -- would actually be thwarted, rather than be served, by the result Plaintiff is seeking.

#### A. CorSolutions' Amended Counterclaim is a Compulsory Counterclaim

First, CorSolutions' Amended Counterclaim should not be reassigned to another court because it is a compulsory counterclaim to Cua's breach of contract action pending in this Court.

Under Fed. R. Civ. P. 13(a), a claim is a compulsory counterclaim where it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Whether a claim is a compulsory counterclaim hinges on whether the claim of the defendant is "logically related" to the claim asserted by the plaintiff. *See Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.*, 31 F.3d 445, 448 (7th Cir. 1994). In determining whether claims are logically related, a court considers "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved and the respective factual backgrounds." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). The test is to

5

be applied flexibly in order to promote judicial economy and further the purpose of Rule 13(a): "to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." *See In Re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994).

In this case, all disputes presented by Cua's Complaint and CorSolutions' Amended Counterclaim have a common factual background and are logically related. First, the parties in the Complaint and Amended Counterclaim are identical. Second, both parties' respective claims arise out of Cua' Employment Agreement and revolve around whether Cua was terminated for "Cause" and whether his Employment Agreement was breached -- by either by him or CorSolutions. Third, the resolution of one party's claim is dependant on legal and factual conclusions which are necessary for the resolution of the other party's claim. For example, in response to Cua's claim, CorSolutions asserts in its Affirmative Defenses that Cua is not entitled to anything because he was terminated for "Cause" and because he has materially breached the restrictive covenants in his Employment Agreement. Similarly, Cua takes the position that CorSolutions must prove that it terminated Cua for "Cause" as a condition precedent to it enforcing the terms of the Employment Agreement against him.

Therefore, Cua's Complaint and CorSolutions' Amended Counterclaim have a "shared realm of genuine dispute," demonstrating that the Amended Counterclaim is a compulsory counterclaim. *See Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 119 (N.D. Ill. 2001). Further, judicial economy would be served by their treatment as compulsory counterclaims. *See Burlington N. R.R.*, 907 F.2d at 712. Thus, Cua's motion to dismiss the Amended Counterclaim should be denied on this basis alone.

### B. Even if it is not a Compulsory Counterclaim, it is a Permissive Counterclaim, and LR 40.3(b)(2) does not mandate its dismissal

In any event, assuming that the Amended Counterclaim is not compulsory, but rather

6

permissive (as Cua contends), LR 40.3 still does not support its dismissal. LR 40.3 governs "Direct Assignment of Cases," and provides the manner in which certain cases shall be directly assigned to either the Executive Committee or to a specific judge. LR 40.3(b)(2), *Re-filing of Cases Previously Dismissed*, provides:

> When a case is dismissed with prejudice or without, and <u>a second case is filed</u> involving the same parties and relating to the same subject matter, <u>the second case</u> shall be assigned to the judge to whom the first case was assigned. The designation sheet presented at the time the second case is filed shall indicate the number of the earlier case and the name of the Judge to whom it was assigned. (Emphasis added.)

The purpose of LR 40.3(b)(2) is to protect judicial resources and ensure that cases that were previously dismissed go back to the court where they were originally filed, rather than to a brand new judge. This ensures that a second judge will not have to relearn a case already familiar to another judge, and it also discourages litigants from "judge-shopping." It is not intended to, nor does it, apply to counterclaims, where the goal of protecting judicial resources is actually hindered by having two different judges hear cases between the same parties which involve plainly interrelated claims.[8]

Moreover, CorSolutions did not file the "second case" referred to under LR 40.3. Instead, CorSolutions filed a counterclaim to an action already pending before this Court.

### C. CorSolutions Did Not Engage In Any "Gamesmanship" by Initially Filing the Judge Moran Action

CorSolutions did not engage in any "gamesmanship" by initially filing the Judge Moran Action, as Plaintiff contends. Rather, it was attempting to preserve its rights in the face of an attempt by Cua to "game" his Employment Agreement by having unfavorable terms voided in Georgia under Georgia law, even though Cua had agreed to jurisdiction in Illinois and to the

---

[8] Moreover, the sole case cited by Plaintiff, *R.N.F. Enterprises, Inc. v. Ecowater Sys. Inc.*, 2002 WL 338876 (N.D. Ill. Mar. 4, 2002), offers nothing to Plaintiff's argument as, despite the fact that Plaintiff indicates the case involves LR 40.3(b)(2) (see Pls. Br. at 12), it actually involves LR 40.3(b)(*3*) – *Removal of Cases Previously Remanded*.

7

interpretation of the Agreement under Illinois law.

As set forth above, CorSolutions first learned that Cua was violating the restrictive covenants in his Employment Agreement and misappropriating CorSolutions' trade secrets on January 10, 2004 when Cua filed the Georgia Action. Given the scope of the requested TRO and possibility that CorSolutions would be unable to file its own breach of contract action against Cua should the TRO be entered, it was important that CorSolutions get its counterclaim on file before the January 14 hearing. Because of CorSolutions' previous counsel's conflict with Matria and unavailability to execute the substitution of counsel form, CorSolutions was unable to file a counterclaim in this Court by January 13, and thus, it filed the Judge Moran Action. Once the conflict was resolved, and the counterclaim could be, and was, filed in this Court, CorSolutions dismissed the Judge Moran Action. That was all there was to it. Cua's suggestion of "gamesmanship" is unjustified.

Furthermore, the modification to the complaint in the Judge Moran Action that CorSolutions made the day after it was originally filed, actually *supports* CorSolutions' explanation regarding why it did not initially file its counterclaim in this Court, rather than the other way around, as Plaintiff argues. Plaintiff seizes on the fact that on January 14, CorSolutions filed an Amended Complaint in the Judge Moran Action to correct some grammatical and typographical errors. But as Cua points out, other changes were made to eliminate the references to the action being a counterclaim to Cua's case -- references that were in there in the first place because CorSolutions all along intended to file it as a counterclaim.

**D. Even if the Case was Transferred to Judge Moran, Under LR 40.4. the Two Actions are Related, and the CounterclaimWould Ultimately End Up Consolidated with the Action in this Court**

Finally, Plaintiff's motion to dismiss should be denied because the result he is seeking actually violates the purposes of the two local rules he cites in his motion. Specifically, Cua seeks to have this case returned to Judge Moran and suggests that CorSolutions should then move to consolidate the cases are related. There is no rule that requires this, and it would be a waste of the court's resources. Under LR 40.4, *Related Cases; Reassignment of Cases as Related*, had the Judge Moran Action not been dismissed, it could have been reassigned to this Court because it is related to the instant case. Local Rule 40.4(a) states that two or more civil cases may be related if they, among other things, involve "some of the same issues of fact and law."

Cua's Complaint and CorSolutions' Amended Counterclaim are plainly related. They both involve some of the same issues of fact and law, *i.e.*, was the Employment Agreement breached by either party? Where cases are related, a case may be assigned to the calendar of the judge with the earlier-numbered case if each of the following criteria under L.R. 40.4(b) are met:

> (1) both cases are pending in this court;
> (2) the handling of both cases by the same judge is likely to result in a substantial savings or judicial time and effort;
> (3) the earlier cases has not progressed to the point where designating the later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
> (4) the cases are susceptible or disposition in a single proceeding.[9]

Again, all of the above criteria are easily met. Both cases are pending in this court and neither case has progressed all that far; in fact, they have been progressing, as they should be, simultaneously. Significant judicial efficiency will result from having the same judge handling both of the cases. As discussed above, neither party's claims can be disposed of without

---

[9] Such a motion for reassignment is made before the judge with the lowest number case, which in this instance, would be this Court.

9

determining whether Cua was terminated for "Cause" or whether Cua violated the restrictive covenants, and it would be a waste of judicial resources for two cases with such overlapping facts and issues to be proceeding in two separate courts. Rather, these issues should be briefed and determined once, by the same court. *See, e.g., Fairbanks Capital Corp. v. Jenkins*, 2002 WL 31655277, at *2 (N.D. Ill. 2002) (granting motion for consolidation). Finally, both cases are reasonably subject to disposition in a single proceeding. In sum, Cua's motion to dismiss based on the local rules makes no sense and is simply a delay tactic. Accordingly, it should be denied.

## II. The *Colorado River* Doctrine Does Not Warrant A Stay Or Dismissal Of This Federal Lawsuit

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976), the United States Supreme Court held that in "exceptional" circumstances, a federal district court may stay or dismiss an action solely because of the pendency of similar litigation in state court in order to promote wise judicial administration.[10] However, the Supreme Court cautioned that federal courts have a "virtually unflagging obligation... to exercise the jurisdiction given to them." *Id.* at 817-18. Only the "clearest of justifications...can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotations omitted). "[R]equests for abstention are generally looked upon with disfavor and a movant must overcome a heavily weighted presumption in favor of the district court exercising its jurisdiction." *Employers Ins. of Wausau v. Shell Oil Co.*, 653 F. Supp. 744, 746 (N.D. Ill. 1987).

---

[10] In his memorandum in support of this motion, Cua makes arguments regarding full faith and credit and/or res judicata. However, his motion clearly seeks a stay or dismissal under the *Colorado River* doctrine, which establishes the extraordinary parameters under which a federal court may abstain from exercising jurisdiction over a matter. If Cua files a motion based on such arguments, this Court will need to confront the issue of the effect, if any, of a judgment rendered by the Georgia court upon CorSolutions' counterclaims related to the restrictive covenants. However, such arguments do not provide any basis for abstention under *Colorado River*.

To determine whether *Colorado River* applies, a court must conduct a two-part analysis. First, the court must consider whether the concurrent state and federal actions are actually parallel. If the suits are parallel, then the court must consider the following facts that might demonstrate the existence of "exceptional circumstances." In the Seventh Circuit, these factors are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Blue Cross and Blue Shield of Illinois v. Cruz*, 396 F.3d 793, 800 (7th Cir. 2005).

The Georgia Action and the Illinois Federal Lawsuit are not parallel as required under *Colorado River*, and accordingly, the state litigation will *not* resolve the federal claims at issue. *After filing this federal action*, Cua deliberately raced to Georgia state court, despite his contractual agreement that Illinois law would apply, in order to seek a declaration that the restrictive covenants are unenforceable *under Georgia law and according to Georgia public policy*. He also obtained an illegal injunction that deterred CorSolutions from enforcing its contractual rights in this federal Court for months. In contrast, Cua's Complaint before this Court relates to his termination from employment, and the issues at stake in CorSolutions' affirmative defenses and counterclaims (seeking damages and other relief) go far beyond the narrow declaration Cua seeks through the Georgia Action.[11] Moreover, even if the suits were parallel, the exceptional circumstances which have been found in rare cases to justify the

---

[11] In fact, Cua's counsel has argued in open court numerous times that nothing in the Georgia Action prevents CorSolutions from moving forward with its trade secrets claims, and the same is true for its contractual and other claims which do not involve the restrictive covenants.

11

extraordinary remedy of a stay or dismissal under *Colorado River* are not present in this case. Therefore, Cua's motion to dismiss or stay under *Colorado River* must be denied.

### A. The Georgia Action and the Illinois Federal Lawsuit Are Not Parallel For Purposes of the *Colorado River* Doctrine

Two suits are parallel when "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *AAR Int'l, Inc. v. Nimelias Enterprises,* 250 F.3d 510, 518 (7th Cir. 2001) (citations omitted). To be sufficiently similar, there should be a "substantial likelihood that the state litigation will dispose of *all claims* presented in the federal case." *Lumen Constr.,* 780 F.2d at 695 (emphasis added). If this Court has "any substantial doubt" "that the parallel . . . litigation will be an adequate vehicle for the complete...resolution of the issues between the parties" in federal court, it should not abstain under *Colorado River. Moses H. Cone Mem'l Hosp.,* 460 U.S. at 28.

In the present case, the state and federal proceedings are not parallel. In the Georgia Action, Cua, Matria, and DMS have brought suit against CorSolutions seeking a declaration that the restrictive covenants in the Employment Agreement are unenforceable under Georgia law, and sought injunctions preventing CorSolutions from seeking to enforce these restrictive covenants with respect to his future employment.

Without citing any authority to support his argument, Cua asks this Court to stay the majority of CorSolutions' counterclaims, while maintaining jurisdiction over his principle Complaint. *Colorado River* carves out the extraordinary circumstances under which a federal court may stay an action and abstain from exercising its jurisdiction, and the partial stay Cua seeks would be entirely inappropriate. In addition, the issues raised in CorSolutions' affirmative defenses to Cua's breach of contract claim address some of the same issues involved in its counterclaims, and this Court would not be able to resolve Cua's breach of contract claim while

12

ignoring CorSolutions' affirmative defenses. Moreover, CorSolutions' counterclaims go well beyond the issue raised by the Georgia Action; the enforceability of the restrictive covenants under Georgia law. Specifically, the Georgia Action would not resolve CorSolutions' counterclaims against Cua for breaches of his Employment Agreement under Illinois law both related to and outside of the restrictive covenants, misappropriation of trade secrets under the Illinois Trade Secrets Act, breach of fiduciary duty, wrongful destruction of evidence, conversion, and fraud. In short, the purpose of *Colorado River* of promoting judicial economy would not be served by the stay or dismissal that Cua seeks.

### B. The Balancing of Factors Weighs Against Staying the Illinois Federal Lawsuit

In the Georgia Action, the Georgia state court has not taken jurisdiction over property, and this factor does not affect the balance in this case. Similarly, the factor of an inconvenient forum does not affect the balance. Cua initiated this litigation in Illinois and CorSolutions' headquarters is located in Rosemont, Illinois. Witnesses and documentation related to his employment with CorSolutions, including his knowledge of its confidential and trade secret information, as well as evidence of his misappropriation of such information, are located in Illinois. On the other hand, Cua is the national sales manager for his new employer and witnesses and documentation related to Cua's employment with Matria and/or DMS are located wherever he is doing business. Therefore, this factor does not favor a stay in this case.

Significantly, a stay of this federal lawsuit in favor of the Georgia Action will not avoid piecemeal litigation, which weighs heavily against granting a stay. The Seventh Circuit holds that "[i]n analyzing whether a dismissal or stay will further the interest in avoiding piece-meal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case."

13

*Lumen Constr.*, 780 F.2d at 695 (emphasis added); *see also Fofi Hotel Co., Inc. v. Davfra Corp.*, 846 F. Supp. 1345, 1352 (N.D. Ill. 1994) ("The critical factor is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.") As stated above, the Georgia Action would not dispose of Cua's claim for breach of contract or CorSolutions' affirmative defenses and counterclaims in this instant case.

The order in which the courts obtained jurisdiction also weighs against a stay deferring to the state lawsuit, because Cua filed this Illinois Federal Action first on December 13, 2004, and then filed the Georgia Action on January 10, 2005. While the Georgia Action has progressed further in light of Cua's arguing for and obtaining an illegal emergency injunction preventing litigation in this Court, given the distinct claims which are before this Court, no progress has been made in the Georgia Action on the myriad issues of this lawsuit, including this Court's preliminary choice of law determinations and its ultimate resolution of the issues. For the above-stated reasons, the timing and progression of the two lawsuits do not favor a stay in this case.

State law governs the issues presented; however, the absence of federal claims in this case is not determinative, nor does it justify a weakening of the stringent tests utilized under *Colorado River*. *See Evans v. Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982) (admonishing against treating diversity plaintiffs as second class litigants.) This Court will ultimately resolve which state's law applies to which claims, regardless of whether there is a rush to judgment in Georgia state court. The Georgia state court's refusal to honor Cua's contractual agreement and apply Illinois law in light of Georgia public policy does not dispose of the choice of law issue to be resolved by this Court as it relates to the complaint, affirmative defenses, and counterclaims before this Court. Thus, a stay in this case would only delay this Court's ultimate duty to adjudicate this case. While state law governs, the Georgia court's determination under

14

Georgia law does not resolve or take precedence over this Court's determination under choice of law principles of which state law applies to the claims before this Court, nor its ultimate resolution of these claims.

Finally, CorSolutions' rights as a counterclaimant as well as a defendant before this Court are not adequately protected by the Georgia state lawsuit. In applying Georgia law based on Georgia public policy, the Georgia state court has ignored the parties' arms' length contractual agreement that Illinois law would govern the Employment Agreement. The Georgia state court has thereby effectively read out of the Employment Agreement the provision that Illinois law shall govern in light of the strong Illinois nexus to the parties' relationship. In addition, CorSolutions seeks damages and/or injunctive relief not only based on the restrictive covenants, but also based on numerous other claims, and CorSolutions is entitled to its day in federal Court to assert these claims.[12]

Based on the analysis of the factors above, and in light of the fact that the balance is "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, a stay of this action based on the *Colorado River* doctrine is not warranted in this case. Because the Georgia Action and this Illinois Federal Action are not parallel, and Cua has not met his burden of demonstrating that exceptional circumstances exist that would clearly justify abstention under *Colorado River*, Cua's motion to dismiss or stay this federal action must be denied.

---

[12] Cua's counsel argues that this Court should dismiss or stay the counterclaims, "[i]f for no other reason," in order to stop CorSolutions' "gamesmanship." The hypocrisy of this accusation cannot be overlooked. Rather than addressing the restrictive covenants before this Court under Illinois law, thereby honoring his contractual agreement, Cua filed a separate lawsuit in Georgia state court in order to obtain a declaration under Georgia law. He then argued for and obtained an unconstitutional TRO in Georgia state court which prohibited CorSolutions from moving forward with this litigation, despite the fact the two Supreme Court cases directly on point provided that a state court could not so enjoin a federal action. Now that this Court has declared that the Georgia TRO does not impact this Court's ability to move forward with the case, Cua asks this Court to abstain from hearing this case under the *Colorado River* doctrine, which is clearly inapplicable to this case.

WHEREFORE, Defendant-Counterclaimant, CorSolutions Medical, Inc. respectfully requests that this Court deny Counterclaim-Defendant Patrick Cua's Motion to Dismiss as set forth above.

Dated: June 21, 2005.

                          Respectfully submitted,

                          CORSOLUTIONS MEDICAL, INC.

                          By: _Carrie E. O'Brien_
                                One of Its Attorneys

Mark E. Furlane (ARDC #00897175)
Steven Shonder (ARDC #06238090)
GARDNER CARTON & DOUGLAS LLP
191 North Wacker Drive
Suite 3700
Chicago, Illinois 60606-1698
Phone: (312) 569-1000
Facsimile: (312) 569-3000

CH02/ 22389716.2

## CERTIFICATE OF SERVICE

I, _Carrie E. O'Brien_, an attorney of record, caused a true and correct copy of the above and foregoing **NOTICE OF FILING** and **CORSOLUTIONS MEDICAL, INC.'S RESPONSE TO PATRICK CUA'S: (1) MOTION TO DISMISS PURSUANT TO LOCAL RULES 40.3 AND 40.4, AND (2) MOTION TO DISMISS OR STAY PURSUANT TO THE *COLORADO RIVER* DOCTRINE** to be served via U.S. Mail and facsimile this 21st day of June, 2005, upon:

> David J. Stetler
> Jonathan M. Cyrluk
> Joni M. Green
> STETLER & DUFFY, LTD.
> 11 South LaSalle Street, Suite 1200
> Chicago, Illinois 60603

_Carrie E. O'Brien_

CH02/ 22392607.1

3